UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -X
NIZAM SHINN,

                Plaintiff,

    -against-

CITY OF NEW YORK, MICHAEL MILLER,
and WILLIAM REDDIN,

                Defendants.
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -X

**COMPLAINT**

**PLAINTIFF DEMANDS
A TRIAL BY JURY**

        Plaintiff Nizam Shinn, by his attorneys, Lumer & Neville, as and for his Complaint, hereby alleges as follows, upon information and belief:

### PARTIES, VENUE and JURISDICTION

        1.    At all times hereinafter mentioned, plaintiff Nizam Shinn was an adult male and a resident of Kings County in the State of New York.

        2.    At all relevant times hereinafter mentioned, defendant City of New York was and is a municipal corporation duly organized and existing under and by virtue of the laws of the State of New York and acts by and through its agencies, employees and agents, including, but not limited to, the New York City Police Department ("NYPD"), and their employees.

        3.    At all relevant times hereinafter mentioned, defendant Michael Miller, whose Shield Number is 2951, was employed by the City of New York as a member of the NYPD and was assigned to the 81 Precinct with the rank of Sergeant. Miller is sued herein in his official and individual capacities.

4. At all relevant times hereinafter mentioned, defendant William Reddin, whose Shield Number is 18523, was employed by the City of New York as a member of the NYPD and was assigned to the 81 Precinct with the rank of Police Officer. Reddin is sued herein in his official and individual capacities.

5. This Court has jurisdiction of this action pursuant to 28 U.S.C. §§ 1331, 1343 and 1367, and 42 U.S.C. § 1983.

6. Venue is properly laid, pursuant to 28 U.S.C. Section 1391, et seq., in the Eastern District of New York, where the plaintiff and defendant City of New York reside, and where the majority of the actions complained of herein occurred.

## RELEVANT FACTS

7. On January 26, 2012, plaintiff was present at Apartment 3R inside 165 Patchen Avenue in Kings County (the "Premises").

8. As of that date, the Premises was rented by Chaka Virgil.

9. Chaka Virgil was a friend and colleague of plaintiff.

10. Plaintiff worked in the arts as a video editor and audio engineer.

11. The Premises were utilized as a work space for filming, video editing and production, and multimedia purposes.

12. Plaintiff did not reside at the Premises.

13. Plaintiff did not have a key to the Premises.

14. On January 26, 2012, plaintiff went to the Premises to edit and produce

a piece of work with Chaka Virgil.

15.     Plaintiff's three children – whose ages were between 5 and 11 – were with him.

16.     Several other individuals were present during the course of the evening.

17.     At no time did plaintiff observe any narcotics, marijuana, weapons, or other contraband, anywhere in the Premises.

18.     At no time did plaintiff observe or have any knowledge of any criminal conduct occurring in the Premises.

19.     At or between about 8:30 and 9:00, plaintiff's children went to sleep in one of the bedrooms.

20.     Plaintiff continued editing a video until about 1 or 1:30 a.m., at which time he went into the same bedroom where his children were sleeping, laid down, and fell asleep.

21.     Plaintiff was woken sometime later during the early morning hours of January 27, 2012, by members of the NYPD.

22.     At that time, plaintiff and his children appeared to be the only people in the Premises, other than the defendants and other NYPD members.

23.     Plaintiff was asked if he resided at the Premises by at least one member of the NYPD. Plaintiff responded that he did not reside there.

24.     Plaintiff was handcuffed in front of his children and placed under arrest.

25. Plaintiff and his children were taken to a local area police station house.

26. The children were released to the custody of their mother.

27. Plaintiff's arrest was processed at the station house.

28. Eventually plaintiff was transported to Kings County Central Booking, where he was imprisoned for many more hours.

29. Plaintiff has since learned that at some time after he fell asleep, a woman named Joell Barnett told the NYPD that she had been assaulted by Chaka Virgil at the Premises that night, and that the defendants had come to the Premises in response.

30. Plaintiff has further learned that when Chaka Virgil stepped into the hallway to speak with the defendants, he was arrested based on Ms. Barnett's complaint.

31. Plaintiff has further learned that the defendants claim they smelled marijuana smoke emanating from the Premises while they were in the hallway and that they observed woman in the apartment whom they claimed appeared to be in distress.

32. Plaintiff has further learned that, based on these alleged observations, the defendants entered the apartment without a warrant or consent of Mr. Virgil, who was already in defendants' custody in the hallway outside the Premises.

33. Plaintiff has further learned that all of the other individuals in the Premises were allowed to leave by the defendants, and that none were arrested.

34. Plaintiff has further learned that the defendants are claiming to have found various items, including three handguns, marijuana, and ammunition, in a closet in a bedroom other than the one in which plaintiff and his children were sleeping.

35. While plaintiff was were imprisoned by the defendants, defendant Reddin completed arrest paperwork in which he expressly claimed that plaintiff had committed the offenses of criminal possession of a weapon, criminal possession of marijuana, possession of ammunition, and possession of a bullet proof vest.

36. The individual defendants forwarded paperwork to the Kings County District Attorney ("KCDA") immediately following the arrest of plaintiff, and Reddin personally spoke with a prosecutor at the KCDA, at which time Reddin stated to the KCDA, in relevant part, that (i) he personally smelled marijuana smoke inside the apartment immediately prior to the defendants' entry into the apartment; (ii) plaintiff told him that he lived in the Premises; and (iii) that plaintiff had a key to the Premises in his possession.

37. All of these statements were materially false. Plaintiff had not observed anyone smoking marijuana nor smelled burnt marijuana prior to falling asleep or after the defendants woke him up. Plaintiff did not reside in the Premises, and had denied living there to the defendants when asked. Plaintiff did not possess a key to the Premises.

38. The defendants made and forwarded these false allegations to the KCDA in order to justify the arrest and to persuade the KCDA to commence the plaintiff's criminal prosecution.

39. In fact, according to the defendants' own reports, all of the alleged contraband was found in a bedroom defendants claimed belonged to Chaka Virgil. Moreover, defendant Miller later testified that he did not search the room plaintiff was in because the defendants lacked sufficient legal cause to search it, even after plaintiff was in

custody.

40. Even if the defendants recovered the weapons, ammunition, and marijuana as they have alleged, they lacked probable cause to arrest plaintiff for the possession of these items.

41. The defendants knew that they lacked probable cause for plaintiff's arrest and therefore fabricated evidence that he resided in the Premises to attempt to create a basis for plaintiff's arrest.

42. Accordingly, the defendants fabricated the purported statement by plaintiff that he resided in the Premises and that he had a key to the Premises in order to attempt to create a basis for charging him with the constructive possession of the items found in and under bags inside a closet in the bedroom defendants acknowledge belonged to Chaka Virgil.

43. The defendants knew and understood that the KCDA, in evaluating whether to commence a criminal prosecution against the plaintiff, was relying on the truthfulness of their statements, claims, and was assuming that all of the defendants' factual statements were truthful in all material respects.

44. As a direct result of these allegations by the defendants' plaintiff was criminally charged by the KCDA under 2012KN007786 with multiple counts of criminal possession of a weapon, possession of marijuana, possession of ammunition, and endangering the welfare of this three children.

45. In view of the seriousness of these charges, the criminal court judge set

-6-

bail for the plaintiff, which was posted shortly thereafter.

46.  The defendants continued to maintain their fabricated story in which they claimed that they entered the Premises because of some combination of the strong smell of marijuana and a vague concern for a woman they observed in the apartment from the hallway. They also continued to claim that plaintiff stated he resided in the Premises and that he had a key to the Premises in his possession.

47.  As a result of this fabrication of evidence by the two individual defendants, and their failure to correct said material misstatements of fact, the plaintiff and Chaka Virgil were indicted on these charges under Indictment Number 880/2012.

48.  Based entirely on the fabricated version of events provided by the defendants, the KCDA continued to maintain the criminal prosecution against plaintiff and Virgil, requiring plaintiff to return to court on multiple occasions.

49.  A suppression hearing was held following motions by plaintiff and Virgil.

50.  On or about February 3, 2014, Justice William M. Harrington, sitting in the Supreme Court, Kings County Criminal Term, issued a Decision and Order in which the court ruled, in relevant part, that the defendants' entry into the apartment was unlawful, and therefore the contraband recovered from the room identified by the defendants as Virgil's bedroom was suppressed, as were plaintiff's statements regarding plaintiff's residence in the Premises.

51.  On February 13, 2014, all charges against the plaintiff were dismissed

and the criminal prosecution terminated in plaintiff's favor.

52. From the date of the arrest through the February 2013 dismissal of the criminal prosecution, the individual defendants continued to maintain their fabricated story. At no time did either of the individual defendants attempt to modify their prior statements to their supervisors or to the KCDA concerning the circumstances surrounding the arrest of the plaintiff, nor did any of the defendants report to any person or entity the false statements made by their fellow officers.

53. At no time did any of the individual defendants make any effort to intervene to prevent any of the other defendants from violating either plaintiff's constitutional rights. None of the defendants sought to protect the plaintiff from being falsely arrested, nor did any of the defendants take any steps whatsoever to intervene in their fellow officers' fabrication of evidence or malicious prosecution of plaintiff.

54. That at all times relevant herein, the individual defendants were on duty and acting within the scope of their employment, and their acts were done in furtherance of the City of New York's interests and without legal justification or excuse.

**FIRST CAUSE OF ACTION**

55. Plaintiff repeats the allegations contained in the preceding paragraphs above as though stated fully herein.

56. Defendants knowingly and willfully arrested plaintiff without probable cause, fabricated evidence against him, forwarded this fabricated evidence to the KCDA for

the sole purpose of initiating plaintiff's criminal prosecution, which in fact caused him to be prosecuted and deprived of liberty, and continued to maintain this falsified version of events, or failed to correct their fellow officers' falsified version of events, through the entirety of the criminal prosecution.

57. By so doing the individual defendants, individually and collectively, subjected the plaintiff to false arrest and imprisonment, the denial of a fair trial through the fabrication of evidence, and malicious prosecution, and thereby violated, and aided and abetted in the violation of plaintiff's rights under the Fourth, Sixth, and Fourteenth Amendments of the United States Constitution.

58. By reason thereof, the individual defendants have violated 42 U.S.C. §1983 and caused plaintiff to suffer emotional and economic injuries, mental anguish, the violation the deprivation of liberty, and the loss of their constitutional rights.

## SECOND CAUSE OF ACTION

59. Plaintiff repeats the allegations contained in the preceding paragraphs above as though stated fully herein.

60. Defendant City of New York was responsible for ensuring that reasonable and appropriate levels of supervision were in place within and/or over the NYPD.

61. Defendant had actual or constructive knowledge that there was inadequate supervision over and/or within the NYPD with respect to its members' abuse of

their authority, abuse of arrest powers, fabrication of evidence, and other blatant violations of the United States Constitution and the rules and regulations of the NYPD. Despite ample notice of inadequate supervision, defendants took no steps to ensure that reasonable and appropriate levels of supervision were put place to reasonably ensure that NYPD members engaged in police conduct in a lawful and proper manner, including their use of their authority as law enforcement officers with respect to the general public, including, and specifically, the plaintiff herein.

62. The defendant City of New York deliberately and intentionally chose not to take action to correct the chronic, systemic, and institutional misuse and abuse of police authority by its NYPD employees, and thereby deliberately and intentionally adopted, condoned, and otherwise created through deliberate inaction and negligent supervision, an NYPD policy, practice, and custom of utilizing illegal and impermissible searches, arrests, and detentions, and the manufacturing of evidence, in the ordinary course of NYPD business in flagrant disregard of the state and federal constitutions, as well as the Patrol Guide, up to and beyond the plaintiff's arrest.

63. The acts complained of herein are a direct and proximate result of the failure of the City of New York and the NYPD properly to select, train, supervise, investigate, promote and discipline police and correction officers and supervisory officers.

64. The failure of the City of New York and the NYPD properly to select, train, supervise, investigate, promote and discipline police and correction officers and supervisory officers constitutes gross and deliberate indifference to unconstitutional conduct

by those officers.

    65.  The official policies, practices and customs of the City of New York and the NYPD alleged herein violated plaintiff's rights guaranteed by 42 U.S.C. § 1983, the Fourth and Fourteenth Amendments to the Constitution of the United States.

    66.  All of the acts and omissions by the individual defendants described above were carried out pursuant to overlapping policies and practices of the municipal defendant in their capacities as police officers and officials pursuant to customs, policies, usages, practices, procedures, and rules of the City and the NYPD, all under the supervision of ranking officers of the NYPD

    67.  Therefore the municipal defendant has not only tolerated, but actively fostered a lawless atmosphere within the NYPD and that the City of New York was deliberately indifferent to the risk that the inadequate level of supervision would lead to the violation of individuals' constitutional rights in general, and caused the violation of the plaintiff's rights in particular.

    68.  By reason thereof, the municipal defendant has violated 42 U.S.C. §1983 and caused plaintiff to suffer emotional and physical injuries, mental anguish, lost earnings, damage to his personal property, incarceration and the deprivation of liberty, and the loss of his constitutional rights.

## DEMAND FOR A JURY TRIAL

Pursuant to Fed. R. Civ. P. 38, plaintiff hereby demands a jury trial of all issues capable of being determined by a jury.

WHEREFORE, the plaintiff demands judgment against defendants jointly and severally as follows:

i. on cause of action one, actual and punitive damages in an amount to be determined at trial;

ii. on cause of action two, actual damages in an amount to be determined at trial;

iii. statutory attorney's fees pursuant to, *inter alia*, 42 U.S.C. §1988 and New York common law, disbursements, and costs of the action; and

iv. such other relief as the Court deems just and proper.

Dated: August 18, 2014
New York, New York

LUMER & NEVILLE
Attorneys for Plaintiff
225 Broadway, Suite 2700
New York, New York 10007
(212) 566-5060

Michael B. Lumer (ML-1947)